**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DUMONT TYRONE BUSH,

    *Plaintiff*,

    v.

LT. COMMANDER KARNISH, *et al*.,

    *Defendants*.

CIVIL ACTION
NO. 5:24-CV-06337-JLS

**M E M O R A N D U M**

**SCHMEHL, J.**  */s/ JLS*                                                 **JUNE 1, 2026**

Proceeding *pro se*, Plaintiff DuMont Bush brings this excessive-force action under 42 U.S.C. § 1983 against officers of the Allentown Police Department who were involved in his October 6, 2023, arrest for robbery and related offenses.  After discovery commenced, Bush subpoenaed the Lehigh County Office of the District Attorney for records related to his arrest.  The District Attorney's Office ("DAO") moved to quash his subpoena, arguing that the records are protected under Pennsylvania's Criminal History Record Information Act, 18 Pa. Cons. Stat. §§ 9101-9183.  For the reasons that follow, the motion to quash is denied.

I

To advance his § 1983 excessive-force claims, Bush has subpoenaed the DAO for the following information:

(1) All videos from Allentown Police incident numbers 23066137 and 23065352 as stated in Mark Holubek 5/29/2024 report;

(2) All video from October 6, 2023 from 1762 S. Church building camera of the execution of the search warrant by ERT, Vice, CID, etc.;

(3) The names and badge numbers of each member from the Emergency Response Team (ERT), that participated in executing a search warrant on October 6, 2023 at apartment 691 W. Montgomery St Apt 3. Case # 23065352;

(4) All police reports from each (ERT) from October 6, 2023, all police reports from all vice unit that was also on site. All names of all vice and CID members along with their report(s);

(5) All body-cam footage from October 6, 2023 from each (ERT) member or any other officer that was on site. Or any car camera from October 6, 2023;

(6) All video of ERT threat matrix which was located in the Polid drive;

(7) Video interview of Dumont Bush, done by Detective Samson Wega, on October 6, 2023;

(8) All video from October 6, 2023 from security camera doing the time in which Dumont Bush was being detained… Video from folders named 1762 S Church building security camera. Time from 2:40 p.m. to 6:30 p.m.;

(9) All information that was said to be related to case # 23066137 as Mark Holubek stated in his report dated May 29, 2024;

(10) The policy on the (ERT) Emergency Response Team and body-cam. The policy on Police wearing uniform and body-cam;

(11) All reports of the time(s) in which the (ERT) dismounted and detained Dumont Bush on October 6, 2023;

(12) Any and all training policy for the (ERT); and

(13) Any and all dispatch information from October 6, 2023 surrounding the time of execution of said search warrant.

Mem. of Law in Supp. of Mot. to Quash Subpoena at 1, ECF No. 41.

In response, the DAO has moved to quash the subpoena in its entirety pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), asserting that the requested materials are protected from production under § 9106 of Pennsylvania's Criminal History Record Information Act ("CHRIA'). That section prohibits entities subject to CHRIA from disclosing "intelligence information"[1] or

---

[1]    18 Pa. Cons. Stat. § 9102 defines intelligence information as "[i]nformation concerning the habits, practices, characteristics, possessions, associations or financial status of any individual compiled in an effort to anticipate, prevent, monitor, investigate or prosecute criminal activity.

"investigative information"[2] except under narrow circumstances, which evidently do not apply here. The DAO does not argue that the subpoena seeks irrelevant information, imposes an undue burden, or is objectionable on any other ground.

III

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or *other protected matter*, if no exception or waiver applies." (emphasis supplied). Here, the DAO contends that the subpoenaed material constitutes "other protected matter" because it is "investigative information" covered by 18 Pa. Cons. Stat. § 9106.[3] The question thus implicitly presented is: What constitutes "other protected matter" under Rule 45?

The answer is not readily apparent. For "caselaw has not fleshed out the definition of the term 'other protected matter.'" *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020). Fortunately, however, the Third Circuit has elucidated the meaning of "privileged"—a companion term in Rule 45(d)(3)(A)(iii)—in determining whether to recognize state-law privilege in federal litigation.

In *Pearson v. Miller*, the Third Circuit held that generally "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." 211 F.3d 57, 66

---

Notwithstanding the definition of 'treatment information' contained in this section, intelligence information may include information on prescribing, dispensing, selling, obtaining or using a controlled substance as defined in the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act."

[2]    18 Pa. Cons. Stat. § 9102 defines investigative information as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information."

[3]    The DAO clearly paints with too broad a brush because the requested policy statements constitute neither investigative information nor intelligence information.

3

(3d Cir. 2000).   And in those cases where federal privilege law applies, a federal court may adopt a state-law privilege after analyzing "whether a privilege of the kind sought . . . 'promotes sufficiently important interests to outweigh the need for probative evidence,'" while recognizing that "the need for probative evidence is viewed as a very weighty consideration indeed—to the extent that only the strongest considerations on the other side of the scale are capable of outweighing it." *Id.* at 69 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)).[4]

Given that *Pearson*'s framework already exists for determining whether state law limits federal discovery in the analogous context of privilege, the Court will apply the same framework in determining whether a state confidentiality statute qualifies as "other protected matter" under Rule 45.   For to hold otherwise would make little sense: On the one hand, the Court would be required to perform a demanding analysis before recognizing the availability of state-law privilege in federal-claim litigation.   *See generally Swanger v. Warrior Run Sch. Dist.*, 659 F. App'x 120, 125 (3d Cir. 2016) (unpublished) ("Federal courts are reluctant to establish new evidentiary privileges.").   And on the other, the Court would effectively apply no analysis at all when confronted with a mere confidentiality statute, adopting it wholesale.

Applying the *Pearson* framework here, the Court begins with the interests articulated by the DAO.   The DAO primarily points to CHRIA's preamble: namely, "the protection of individual rights to privacy and for the completeness and accuracy of the control of, dissemination of, the

---

[4]     Relatedly, this Court has uniformly held that § 9106 does not create a privilege under either federal or state law.   *See Zielinski v. Mega Mfg., Inc.*, No. 2:18-CV-05113-JDW, 2019 WL 6353203, at *3 (E.D. Pa. Nov. 26, 2019); *Piazza v. Young*, No. 4:19-CV-00180, 2020 WL 6544979, at *3 (M.D. Pa. Nov. 6, 2020); *Shetayh v. State Farm Fire and Cas. Co.*, 2020 WL 6817325, at *3 (E.D. Pa. Nov. 20, 2020) (quoting *Carusone v. Kane*, 2017 WL 5900429, at *2 (M.D. Pa. Nov. 30, 2017)) ("District courts within the Third Circuit have consistently 'concluded that CHRIA does not compel a federal court to recognize a blanket privilege against the discovery of police reports containing investigative information or complaints against third persons.'").

establishment of guidelines for the security of, and provision for quality control of criminal history record information."  Mem. of Law in Supp. of Mot. to Quash Subpoena at 2-3, ECF No. 41.

After careful review, the Court concludes however that this recitation, without more, does not articulate interests sufficiently important to outweigh the need for the evidence requested in support of a federal civil-rights claim.  *See also Pearson*, 211 F.3d at 68 ("The appropriateness of deference to a state's law of privilege is diminished, however, in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege. '[T]here is a "special danger" in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.'" (quoting *ACLU v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981))).

To start, "the protection of individual rights to privacy" rationale carries little weight under today's circumstances.  By all accounts, the records subpoenaed concern Plaintiff's own criminal case, not the confidential information of third parties.  So the criminal-history disclosure concerns ordinarily implicated by CHRIA are largely absent.

Second, the DAO's generalized reference to "security interests" does not move the needle much either.  Although protection of sensitive investigative information may, in certain circumstances, constitute a sufficiently important interest, the DAO identifies nothing about this particular material that would render such concerns compelling.  The underlying criminal matter here has apparently concluded.  The DAO does not contend that the requested records implicate ongoing investigations or reveal confidential investigative techniques.  Nor has the DAO articulated any concrete harm likely to result from disclosure.

IV

Against this backdrop, the motion to quash is denied. The DAO must produce, to the extent in its possession, the materials sought by the subpoena. Before doing so, however, the DAO shall confer with defense counsel to determine whether any responsive materials have already been provided to Bush. To the extent that such materials have already been provided, the DAO need not reproduce them but shall identify that basis for non-production in its response to the subpoena. An appropriate order follows.